HERMANN COLBERG and JOAQUIN COSTA, Appellants and Respondents, *v.* LUKE M. EMERSON, Respondent and Appellant.

*Recovery of money advanced, but not of a bonus agreed to be paid therefor, where the contract is not fulfilled.*

In an action brought to enforce an agreement "to pay all the expenses of transportation by railway and sea, together with other incidental and necessary expenses, to assure the arrival and delivery of the stock (certain jackasses) in the said port of New York city from Vich (Spain) to said destination," for which "services and as compensation for advancing the funds for a service of this kind, Mr. Emerson (the defendant) shall pay to the parties of the second part (the plaintiffs) the full sum of $1,500 (one thousand five hundred dollars), without deduction for expenses," it appeared that the plaintiffs advanced to the defendant a sum sufficient to pay the expense of transportation from Spain to Bordeaux in France, but refused to make any further advances and refused to pay the expense of transportation from Bordeaux to New York.

*Held,* that the plaintiffs were entitled to recover the amount of their advances, but were not entitled to recover the $1,500, compensation for making the advances, they having failed to perform the contract by refusing to pay the expenses of transportation from Bordeaux to New York.

*Semble,* that a different question would have been presented had the plaintiffs offered to pay the freight, either at New York or elsewhere, required to be paid in order to insure the arrival of the animals at New York.

Cross-appeals by the plaintiffs, Hermann Colberg and another, and by the defendant, Luke M. Emerson, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 20th day of July, 1897, upon the report of a referee.

*George A. Strong,* for the plaintiffs.

*Theodore F. C. Demarest,* for the defendant.

Ingraham, J. :

The referee found that on the 8th day of November, 1893, at Barcelona, Spain, an agreement was entered into between the plaintiffs and the defendant, by which the plaintiffs agreed to advance the " necessary amount to complete the total purchase price of said jackasses up to the sum of $4,000 (four thousand dollars), and besides to pay all the expenses of transportation by railway and sea, together with the other incidental and necessary expenses, to assure the arrival and delivery of the stock in the said port of New York city from Vich to said destination." It was further provided and agreed that " for this service and as compensation for advancing the funds for a service of this kind, Mr. Emerson shall pay the parties of the second part the full sum of $1,500 (one thousand five hundred dollars) without deduction for expenses." The making of this agreement was not denied, and it was further admitted that under it the plaintiffs advanced to the defendant the sum of $6,716.20 ; that these animals were shipped from Spain to Bordeaux in France, the transportation to that point being paid out of the advances made by the plaintiffs to the defendant, but that at Bordeaux the plaintiffs' agent refused to make any further advances and refused to pay the expenses of transportation from Bordeaux to New York. The referee found in favor of the plaintiffs and against the defendant for the amount of the advances, but held that the

plaintiffs were not entitled to recover for the $1,500 which was to be paid as compensation for making the advances, on the ground that, by the refusal of the defendant to advance the money to pay the expenses of transportation from Bordeaux to New York, the plaintiffs were not entitled to recover the $1,500 which was to be paid as compensation for the advances that they agreed to make. We agree with the disposition of this case made by the learned referee, and it is hardly necessary to add anything to his opinion. It is clear that the defendant is liable for the money loaned by the plaintiffs. By the agreement the plaintiffs agreed to make the advances to the defendant. They were to be repaid in the city of New York immediately on the arrival of the steamer, or, at the latest, within ten days following the landing of the stock. The repayment of these advances was not by the agreement made conditional upon the defendant's complying with all the covenants of the agreement, and the fact that the plaintiffs advanced a certain amount and then refused to make further advances, would not prevent the plaintiffs from recovering for the amount actually advanced. We think, therefore, that upon the conceded facts, the defendant was liable for the advances made by the plaintiffs. The right, however, to recover the $1,500, which was expressly stated to be "for this service and as compensation for advancing the funds for a service of this kind," the plaintiffs would not be entitled to recover, as it is quite clear that they did not comply with the contract; that they did not advance the funds which they had agreed to advance under the agreement. The evidence is that they did make certain advances by which the animals were purchased and shipped to Bordeaux. They then refused to make the further necessary advances to pay the expenses of the delivery of the animals at New York city. This was a violation of their agreement, and they were not entitled to recover what it had been agreed should be paid to them as compensation for carrying out the agreement. The fact that the defendant was not bound to, and did not as a fact, pay the freight until the animals arrived in New York, did not relieve the plaintiffs from their obligation to pay the cost of shipping the animals from Bordeaux to New York. When the demand was made upon the plaintiffs' agent for this money he refused to make any further advances, and, as a matter of fact, no further advances were made. A differ-

ent question would have been presented if he had offered to pay the freight, either at New York or elsewhere, when required to be paid to insure the transportation of the animals, but instead of that the evidence is that he absolutely refused to make any further payment after the last payment that was made at Bordeaux. He refused to make advances sufficient to insure the arrival of the animals at New York.

We think the case was correctly disposed of by the learned referee,* and that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.

---

CHRISTIAN ABELE, Respondent, *v.* BENJAMIN J. FALK, Appellant.

*Delay in constructing a machine — burden of accounting for the delay — proof that it was caused by the execution of work subsequently ordered is competent — competency of books and a bill as evidence.*

In an action brought to recover the value of services rendered by the plaintiff under an employment to design and construct a machine, which the defendant refused to accept upon its completion, it appeared that the plaintiff was distinctly informed at the time the contract was made that the machine was needed by the defendant for work to be done under a contract which he had at that time, and that the machine, in order to be of use to him, must be made at once; that the plaintiff agreed to build it as quickly as possible, and to do his utmost to hurry it along, it being understood between the parties that the time required would probably be but a few weeks. The time actually employed in its completion was six months.

---

*The following is the opinion of the referee:

HAMILTON ODELL, Referee:

The plaintiffs' claim is for moneys advanced, amounting to $6,716.20, and for services rendered, for which the complaint alleges they were to be paid by said defendant the sum of $1,500. The defendant admits that the advances were made, but denies that the services were rendered.

On the 18th of November, 1893, at Barcelona in Spain, an agreement was entered into between the parties which recited that the defendant had contracted to purchase about 200 jackasses, and had not sufficient money to pay for them in full and to meet the expenses of their shipment to New York, and by which the plaintiffs declared that "they are disposed to come to the aid of said Mr. Emerson, giving to him at once and immediately, after signing this contract, the

*Held*, that, under these circumstances, the burden rested upon the plaintiff to account in some way for this great delay;

That it was competent for the defendant to prove that the delay had been occasioned, not by the difficulties of designing and building this machine, but because the plaintiff had accepted and executed orders for other work to the exclusion of the work upon this machine;

That the plaintiff's books were not competent evidence of the amount of time spent and material furnished in the construction of the machine, no testimony being given to establish their accuracy by any one who had personal knowledge of the time so spent, nor were entries made in the books kept by the plaintiff's bookkeeper from other books and memoranda handed to him by the plaintiff's employees, but not produced, as such books kept by the bookkeeper were not books of original entry; nor was a bill admissible which had been made out from the plaintiff's books generally, their accuracy not having been proved by any competent evidence.

APPEAL by the defendant, Benjamin J. Falk, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of June,

---

necessary amount to complete the total purchase price of said jackasses up to the sum of $4,000 (four thousand dollars), and besides to pay all the expenses of transportation by railway and sea, together with the other incidental and necessary expenses, to assure the arrival and delivery of the stock in the said port of New York city from Vich to said destination," under certain conditions set forth in the said agreement. And it was provided and agreed that "for this service, and as compensation for advancing the funds for a service of this kind, Mr. Emerson shall pay to (the plaintiffs) the full sum of $1,500, without deduction for expenses."

The jacks were shipped from Vich to the French frontier, and then transshipped to Bordeaux. After some delay in Bordeaux they were sent forward by steamer to Liverpool and thence to New York, where they arrived on January 31, 1894.

The proofs show that the plaintiffs did not fully perform their part of the agreement. The charges attending the shipment and transportation of the jacks from Vich to the frontier, or possibly to Bordeaux, were paid by them, and at Bordeaux the defendant received $200 from Ferrer, the plaintiffs' agent. Only to this extent did they keep their agreement "to pay all the expenses * * * by railway and sea * * * to assure the arrival and delivery of the stock in the said port of New York City." The port at which the jacks were to be put on steamer for New York was not specified in the agreement, but it was understood and agreed between the parties that they were to be shipped from Havre. It is said that, acting in accordance with that understanding, the plaintiffs provided funds at Havre to meet necessary expenses, but that the defendant, in violation of the understanding, sent the jacks from Bordeaux direct to Liverpool. There is no proof that funds were so provided other than the statement of Ferrer that Colberg told him so. It is undisputed that Ferrer refused to pay the freight

1896, upon the verdict of a jury, and also from an order entered in said clerk's office on the 22d day of June, 1896, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover the reasonable value of services rendered and materials furnished by the plaintiff upon the alleged employment of the defendant in the creation, designing and construction of a certain machine, which machine the defendant refused to accept upon its completion.

*Samson Lachman,* for the appellant.

*J. Woolsey Shepard,* for the respondent.

---

from Bordeaux to Havre, and said that he could advance no more money either for freight or for other expenses, and that the defendant got no money from Ferrer or Colberg or Costa after leaving Bordeaux. The plaintiffs appeal to the provisions of the agreement by which, in order to secure them for their advances, the jacks were to be "invoiced from Vich to the port of embarkation in the name and as the property of Mr. Joaquin Costa," and that they should be shipped from that port "in the name of Mr. Herman Colberg, and shall be consigned to Messieurs. G. Amsinck and Company of New York;" and they claim that they were released from all obligations to furnish transportation and other moneys because the defendant violated those provisions by having the jacks sent forward from Bordeaux in his own name. The testimony shows that the jacks were shipped from Vich to the frontier in the names of Colberg and Costa, and from the frontier to Bordeaux in the name of Colberg. As I understand the agreement, the plaintiffs' obligation was to furnish whatever money was necessary to convey the jacks from Bordeaux to New York, without reference to the defendant's ability to procure funds from any other source. I do not agree with the learned counsel for the plaintiffs that "if the defendant could secure funds from home, at any time, he was certainly bound to do so." The plaintiffs were the first defaulters under the agreement. They refused to pay the freight on the jacks to Havre. It is not necessary to consider to what extent that refusal released the defendant from his stipulation to have the jacks invoiced or shipped in the name of Colberg. Whatever the defendant may have afterwards done in violation of the agreement did not excuse the plaintiffs' prior failure to perform on their part. Now the $1,500 was to be the plaintiffs' reward for doing all that they engaged to do by the said agreement. They did not perform or offer to perform in full, and so have no claim to the reward.

The defendant's counterclaim is not sustained. The plaintiffs are entitled to judgment for the said advances, with interest.